ROTHWELL v. KNIGHT, et al.*

(No. 1349; August 16, 1927; 258 Pac. 576.)

Bankruptcy—Jurisdiction — Petition For — Adjudication — Assignee for Creditors—Courts—Comity Between Courts—Title of Trustee After Adjudication—Appeal and Error—Liability on Assignee's Bond—Common-Law Bond—Real Party in Interest.

1. In bankruptcy matters, jurisdiction of the federal courts is paramount.

2. The filing of an involuntary petition in bankruptcy is a proceeding in rem, is notice to all of the world, and is as effective to hold the property of the bankrupt as a writ of attachment issued and served, under Federal Bankruptcy Act, § 70a (11 USCA § 110).

3.  An adjudication of bankruptcy relates back to the date
    of the filing of the petition and holds property of the
    bankrupt as of the date of the filing, just as a judgment
    in a case in which a writ of attachment was issued holds
    the property attached as of the date of the attachment,
    under Federal Bankruptcy Act, § 70a, (11 USCA § 110).

4.  If an assignee for the benefit of creditors, under Comp.
    St. Wyo. 1920, §§ 4141-4171, has no individual claim ac-
    quired before the filing of the petition in bankruptcy,
    he may be compelled, under Federal Bankruptcy Act,
    § 70a (11 USCA § 110), to account in a summary pro-
    ceeding in the bankruptcy court, in view of section 3
    (11 USCA § 21).

5.  Rule of comity between courts is one of sound public poli-
    cy and should be applied in a spirit of liberality, but its
    application depends somewhat on circumstances.

6.  The jurisdiction of a state court over the property of a
    debtor under an assignment for the benefit of creditiors,
    made under Comp. St. Wyo. 1920, §§ 4141-4171, *held* to
    terminate, under Federal Bankruptcy Act, § 70a (11
    USCA § 110), at least on adjudication of bankruptcy,
    without notice of the adjudication being given to the state
    court, and without a request by the bankruptcy court to
    turn over the assets being made.

7.  An assignee for the benefit of creditors, under Comp. St.
    Wyo. 1920, §§ 4141-4171, is required to take notice that
    Federal Bankruptcy Act, § 70a (11 USCA § 110), vests
    title to the property of a bankrupt in his trustee in
    bankruptcy from the date of the adjudication of the
    bankruptcy, at least.

8.  After the adjudication of bankruptcy of debtor, an assignee
    for the benefit of creditors, under Comp. St. Wyo. 1920,
    §§ 4141-4171, is a mere custodian without title, under
    Federal Bankruptcy Act, § 70a (11 USCA § 110), and his
    acts other than those which are custodial are void.

9.  From date of adjudication of bankruptcy of debtor, ex-
    clusive jurisdiction of his property vests in the bankrupt-
    cy court, under Federal Bankruptcy Act, § 70a (11 USCA
    § 110), and a subsequent settlement of the accounts of an
    assignee for the benefit of his creditors selected under

Comp. St. Wyo. 1920, §§ 4141-4171, made by the state court, is without its jurisdiction, and the assignee must account to the bankruptcy court for all moneys in his hands at the date of the adjudication or subsequently acquired.

10.  Where no appeal was taken from the determination of a bankruptcy court having sole jurisdiction, fixing the amount to be paid by an assignee for the benefit of creditors of the debtor, the determination *held* not subject to attack since the judgment of a court of competent jurisdiction is not subject to collateral attack.

11.  Where the question whether the judgment of a bankruptcy court, determining the sum due from an assignee for the benefit of creditors to debtor's subsequently chosen trustee in bankruptcy, was prima facie evidence only against the surety of the assignee or conclusive evidence was not litigated in the trial court, it need not be determined by the Supreme Court.

12.  Surety of assignee for the benefit of creditors, under Comp. St. Wyo. 1920, §§ 4141-4171, *held* liable, under Federal Bankruptcy Act, § 70a (11 USCA § 110), for the sum found due to the debtor's subsequently chosen trustee in bankruptcy under a bond conditioned on faithful performance of duties in "full compliance with law."

13.  An assignee for the benefit of creditors, under Comp. St. Wyo. 1920, §§ 4141-4171, and the surety on his bond must be *held* to have known that, on the institution of bankruptcy proceedings against the debtor and the adjudication of bankruptcy, the state law relating to assignments for the benefit of creditors would cease to apply and that the law would require the assignee to account to the bankruptcy court, under Federal Bankruptcy Act, § 70a (11 USCA § 110), vesting title to property in trustee in bankruptcy.

14.  A common-law bond creates no liability beyond its own terms, notwithstanding that it is intended to be given in compliance with a statute, unless there is a special remedial statute effecting this result.

15. In an action by trustee in bankruptcy having title to property, under Federal Bankruptcy Act, § 70a (11 USCA § 110), against an assignee for the benefit of creditors chosen under Comp. St. Wyo. 1920, §§ 4141-4171, brought on his bond payable to the state and claimed to be a common-law bond and to impose no liability beyond its terms, trustee in bankruptcy *held* entitled to recover as the "real party in interest," within section 5580, under section 5581, providing that when one renders his sureties liable any one entitled to benefit of security may sue thereon in own name.

16. Action by trustee in bankruptcy having title to property, under Federal Bankruptcy Act, § 70a (11 USCA § 110), to recover sums due from assignee for benefit of creditors chosen under Comp. St. Wyo. 1920, §§ 4141-4171, brought on the bond of the assignee, may be instituted without first securing authority from the state court, under section ·5580, requiring actions to be brought by real party in interest, and section 5581, providing that this rule shall not prevent action against sureties by any one entitled to benefit of security.

*See Headnotes: (1-4) 15 CJ p. 933 n. 87; (5) 7 CJ p. 32 n. 95, p. 46 n. 33, p. 87 n. 97, p. 88 n. 98, p. 90 n. 25, p. 136 n. 67, p. 170 n. 1. (6) 7 CJ p. 55 n. 13, p. 170 n. 1, 15 CJ p. 1161 n. 59 New. (7-9) 7 CJ p. 32 n. 95, p. 34 n. 1, p. 136 n. 66, p. 170 n. 1. (10) 3 CJ p. 689 n. 41, p. 708 n. 56, 34 CJ p. 1160, n. 61. (11) 3 CJ p. 689 n. 41, p. 708 n. 56. (12) 5 CJ p. 1306 n. 95 New. (13) 5 CJ p. 1306 n. 95 New. (14) 9 CJ p. 86 n. 62. (15-16) 5 CJ p. 1308 n. 49, 9 CJ p. 28 n. 87, 88.

APPEAL from District Court, Laramie County; WILLIAM A. RINER, Judge.

Action by Erwin C. Rothwell, trustee in bankruptcy of the estate of George E. Davis, bankrupt, against P. H. Knight and another. From a judgment for plaintiff, defendants appeal.

*Kinkead, Ellery & Henderson,* for appellants.

The assignee is an officer of the district court; 4152-4161 C. S. That court should judge whether he has faithfully discharged his duties; Stearns on Suretyship, Sec.

227, Pac. 390; Coe v. Patterson, 103 N. Y. S. 473; State ex
rel Pope v. Bank, (Minn.) 114 N. W. 651; Brown v. Stew-
art, 78 Ill. App. 387; In re Bieber, 59 N. Y. S. 118; Lam-
bert v. Co., (Pa.) 106 A. 541; High on Receivers, 4th Ed.,
p. 950; Planter's Ass'n v. Harris, (Ark.) 131 S. W. 949;
Hershey Chocolate Co. v. Sharp, (Ala.) 74 So. 33; Collier
on Bankruptcy, (9th Ed.) p. 992. The title of a trustee in
bankruptcy dates from the adjudication; Christofferson v.
Harrington, (Minn.) 136 N. W. 289; In re Rathman, 183
Fed. 913; In re Mertens, 144 Fed. 818. What was lawfully
done before adjudication will be upheld; In re Perpall, 271
Fed. 466. Davis, but for his assignment to Knight, would
have retained title until adjudication; under Section 4168
C. S., Knight was not a purchaser in good faith; filing of
petition in bankruptcy did not affect the right of the state
court to possession of the property; In re Watts, 47 L. Ed.
933. Chapter 252 C. S. is not suspended by the bankrupt-
cy act; the decision in Hasbrouck v. La Febre, 23 Wyo.
367, was decided prior to the decision in the case of Stell-
wagen v. Clum, 62 L. Ed. 507, and the question should
be reconsidered here; see also, Closser v. Strawn, 227 Fed.
139, and cases cited; also In re McElwain, 296 Fed. 113.
At common law, only the obligee named in the bond could
sue thereon, and this is true today in the absence of a
statute providing otherwise; Town v. Chapman, 11 Mich.
499; Stevenson v. Milling Co., 84 Fed. 114; People v. Laid-
law, (Mich.) 79 N. W. 576; Sunter v. Fraiser, (Cal.) 228
Pac. 660; Kuhl v. Chamberlain, (Ia.) 118 N. W. 776; 9
C. J. 28; Lumber Co. v. Sels, (Cal.) 159 Pac. 600; Steven-
son v. Morgan, (Nebr.) 93 N. W. 180. The bond here was
given under the provisions of Chapter 252 C. S.; the sure-
ty is as much protected as the surety of a receiver or ad-
ministrator; if it be held that Chapter 252 was suspended
in toto by the bankruptcy act, the bond would not be good
as a statutory obligation; Conant v. Newton, 126 Mass.
105. Having been filed as an official bond of the assignee,

it would not be binding unless the assignee was an officer.

*M. A. Kline*, for respondent.

Knight took possession after the filing of petition in bankruptcy, and was answerable to the bankruptcy court; Louis Neuberger, 233 Fed. 701; May Trustee v. Henderson, (U. S.) 69 L. Ed. 446; Bryan v. Bernheimer, 181 U. S. 188. The finding of the bankruptcy court, as to liability of defendant on its bond, was binding as to the amount due; 22 Cyc. 136; Stovall v. Banks, 10 Wall. 583; Peery v. Merrill, (Okla.) 179 Pac. 28. The statute, 252 C. S., does not find that an assignee for creditors is an officer of the court; there is authority to the contrary; Powers v. Ass'n., 86 Fed. 709; Lehman v. Rosengarten, 23 Fed. 642; In re Wellmade Gas Mantle Co., 233 Fed. 250; Fairbanks Steam Shovel Co. v. Mills, 240 U. S.. 642, and cases cited. State statutes cannot defeat the operation of bankruptcy law; In re Watts, 190 U. S. 1; Bailey v. Machine Co., 239 U. S. 268; Loveland on Bankruptcy, page 104. The state court was without jurisdiction; Hasbrouck v. La Febre, 23 Wyo. 380; Pelton v. Sheridan, (Ore.) 144 Pac. 410; In re Curtis, 91 Fed. 737; In re Knight, 125 Fed. 35; 5 C. J. 1306. Even if the assignment and the proceedings in the state court were void, the bond given in those proceedings would be enforceable; Town v. Greenlee, (W. Va.) 129 A. S. R. 971; Daniels v. Tearney, 26 L. Ed. 187; 102 U. S. 415; Smith v. Town, (Wash.) 203 Pac. 369; Esselstyn v. Gold Corporation, (Colo.) 196 Pac. 185. The surety is estopped from denying liability; People's Lumber Co. v. Gillard, (Cal.) 68 Pac. 576; Henry County v. Salmon, (Mo.) 100 S. W. 20; City v. Company, (Ore.) 52 Pac. 26; Emanuel v. McNeil, (N. J.) 94 A. 616. Creditors are entitled, as the real parties in interest, to bring this action through a trustee in bankruptcy, who represents them; Irrigation Co. v. La Porte, (Wyo.) 188 Pac. 360; Board v. Young, (Wyo.) 29 Pac. 1002; Kelly v. State, 25 O. S. 567;

Michand v. Erickson, (Minn.) 122 N. W. 324; 5581 C. S.
Bonds of compensated surety companies are strictly con-
strued against the surety; Duke v. National Surety Co.,
(Wash.) 227 Pac. 2.

BLUME, Chief Justice.

On February 6, 1922, one George E. Davis was engaged
in the mercantile business in Thermopolis, Wyoming, and
on that date made an assignment for the benefit of creditors,
under the provisions of chapter 252, W. C. S. 1920. P. H.
Knight, one of the defendants herein, was made the assignee.
The assignment was filed of record with the County Clerk
of Hot Springs County within ten days after it was exe-
cuted, and a certified copy thereof was filed in the office of
the District Court of Hot Springs County on or about the
15th day of February, 1922, on which date also a bond, ex-
ecuted by P. H. Knight, as principal, and the National
Surety Company, as surety, was filed with said clerk. Upon
the execution and filing of the bond, Knight took possession
of the stock of goods and other property of Davis. In the
meantime and on February 11, 1922, certain creditors of
Davis who had notice of the assignment aforesaid, filed in
the United States District Court for the District of Wyo-
ming, an involuntary petition in bankruptcy, and upon the
hearing on said petition Davis was, on the 2nd day of May,
1922, duly adjudged a bankrupt. Subsequently Rothwell,
the plaintiff herein, was elected as trustee in bankruptcy,
and he duly qualified as such. Between the date of the
filing of the petition in bankruptcy and the date of the
adjudication of Davis as a bankrupt, Knight, who at all
times had knowledge of the proceedings in bankruptcy as
aforesaid, proceeded to administer the property of Davis,
as assignee, for the benefit of creditors, and made at least
one report to the District Court of Hot Springs County,
Wyoming, during that time. On May 18, 1922, which was
subsequent to the adjudication of Davis as a bankrupt,
Knight filed a final report in the District Court of Hot

Springs County, Wyoming, which informed the court of the adjudication in bankruptcy and in which he asked the approval of his acts and the allowance of certain fees and of certain expenditures made by him. On June 6, 1922, the District Court of Hot Springs County, Wyoming, entered an order approving the final report of Knight, as assignee, and his supplemental report thereto, made the allowances asked by Knight, found the sum due to be $720.39, and ordered the assignee discharged as such upon the payment of said sum of $720.39 to Rothwell, the trustee in bankruptcy. This amount was duly paid. After the adjudication in bankruptcy, the United States District Court for the District of Wyoming, made an order requiring the defendant Knight to account to it for the property and money belonging to the estate of George E. Davis. Knight, accordingly, filed his report in compliance with this order. This report was objected to, and, after a hearing thereon, an order was duly entered finding the amount still due from Knight, after giving credit for the sum of $720.39 aforesaid, to be $1812.88, and an order was entered requiring him to pay that amount to the trustee in bankruptcy. This was not done and thereupon the present action was started, which is a suit upon the bond given by Knight and his surety, and brought by the trustee in bankruptcy. On the hearing in this action, the District Court found in favor of the plaintiff, entered judgment for $1812.88 with interest from September 6, 1922, and from that judgment so entered the defendants have appealed.

1. As heretofore stated, some of the transactions by the assignee took place before adjudication in bankruptcy, some of them thereafter. The adjudication mentioned was made on May 2, 1922. The final report of the assignee showing certain expenditures and certain receipts, was filed on May 18, 1922, and the approval of that report and the order of final discharge of the assignee was entered on June 6, 1922. And the main inquiry herein is as to what effect must be attributed to the fact that he accounted to the state

court and that such court approved of his accounts and finally discharged him. Counsel for appellant contend that Knight was an officer of the state court; that as such it was his duty to account to that court, and having done so, and having been discharged, the order of the state court was binding an all parties, and the bankruptcy court had, accordingly, no jurisdiction to make him account as such officer. The nearest case in point cited by them is Lambert v. National Hog Company, 263 Pa. 354, 106 Atl. 541. In that case a receiver of the state court filed an accounting in that court after proceedings in bankruptcy and after a trustee in bankruptcy has been appointed. The trustee intervened and objected to the accounting in the state court, claiming that it should be made in the bankruptcy court. The court said in part:

"In would be an anomaly in the law if a receiver, who is an officer of the court appointing him, was denied the right to account to that court. He is the arm of the court, doing the court's work, and all that he has he holds for the court. Doubtless Congress could require that an accounting where bankruptcy supervenes should be had only in the bankruptcy court, for the control of Congress over such matters is supreme; but it would require a clear expression of such an intention, before the courts would so hold. In the present case there is no such clear expression in the statutes."

The court cites in support of its conclusion the case of Gealy v. South Side Trust Co., (C. C. A.) 249 Fed. 189. In that case the court held, quoting some expressions in the case of In re Watts, 190 U. S. 1; 23 S. Ct. 718, 47 L. Ed. 933, that the rule of comity should be applied between courts, the application being left to the good sense of the courts. But it was further distinctly held that the bankruptcy court has paramount jurisdiction in bankruptcy proceedings and that if it fails to apply the rule of comity, but makes an order within its jurisdiction and requires a receiver of a state court to account to the bankruptcy

court, such order will not be disturbed. The case, accordingly, is against the contention of counsel for the appellant herein.

It may be noted in this connection that the Lambert case does not state that the accounting made by a receiver in a state court would be binding upon a bankruptcy court, in a case where such bankruptcy court has jurisdiction, although it may be that this is implied in the decision. And in order to arrive at the correct solution of the questions involved in the case at bar, it may be well to briefly review some of the decisions of the United States Supreme Court, the final interpreter of the meaning and scope of the bankruptcy act, bearing in mind that section 3 of the bankruptcy act of 1898 provides, among other things, that the making of a general assignment for the benefit of creditors shall constitute an act of bankruptcy, and that a petition may be filed against a person who has committed such act of bankruptcy within four months after the commission of the act. In Bryan v. Bernheimer, 181 U. S. 188, 44 L. Ed. 814, 21 S. Ct. 557, it appears that an assignment was made for the benefit of creditors; nine days thereafter a petition in bankruptcy was filed; thereafter, but—as it seems—before the adjudication in bankruptcy, the assignee sold certain property of the bankrupt to one Bernheimer. It was held that the purchaser could be compelled, by summary proceeding, to deliver the property so held by him to the trustee in bankruptcy; that the assignment made did not constitute the assignee an assignee for value, but simply made him an agent for the distribution of the property among the creditors of the assignor, and that he did not hold the property adversely. In Randolph v. Scruggs, 190 U. S. 533, 47 L. Ed. 1165, 23 S. Ct. 710, it appears that an assignment for the benefit of creditors had been made, followed by a petition in bankruptcy. Randolph, evidently considering that he could not validly be paid by the assignee, filed his claim in the bankruptcy court for services performed in drawing up the deed of assignment and for serv-

ices rendered the assignee thereunder.  The court in its discussion of whether the claim should be allowed says, among other things:

"It is admitted that a general assignment for the benefit of creditors, made within four months from the filing of a petition in bankruptcy, is void as against the trustee in bankruptcy, so far as it interferes with his administering the property assigned."

In re Watts, 190 U. S. 1, 47 L. Ed. 933, 23 S. Ct. 718, it was held that attorneys could not be held guilty of contempt, when they, in good faith, gave advice to a state court, pursuant to which that court compelled the surrender by a receiver in bankruptcy of property which had without the consent of the state court been voluntarily turned over to him by a receiver appointed by such court.  The court, among other things, said:

"The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit; but that rule can have only a qualified application where winding-up proceedings are superceded by those in bankruptcy as to which the jurisdiction is not concurrent.  Still it obtains as a rule of comity, and accordingly the receiver of the district court brought his appointment to the knowledge of the Floyd circuit court and requested the delivery of the assets."

The meaning of the language here quoted is somewhat indefinite, but the court further on in the opinion distinctly said: "The proceedings in bankruptcy displaced those in the state court, and terminated the jurisdiction of the latter."  The case of Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 56 L. Ed. 208, 32 S. Ct. 96, holds that under the facts in the case the bankruptcy court waived its jurisdiction to administer the estate of the bankrupt.  The court, however, discusses the effect of the bank-

ruptcy proceedings and of the filing of the petition there-
for at length, and says in part:

"The filing of the petition is an assertion of jurisdiction
with a view to the determination of the status of the bank-
rupt and the settlement and distribution of his estate. The
exclusive jurisdiction of the bankrupt court is so far in rem
that the estate is regarded in custodia legis from the filing
of the petition. It is true that under sec. 70a of the act of
1898 the trustee of the estate, on his appointment and quali-
fication, is vested by operation of law with the title of the
bankrupt as of the date he was adjudicated a bankrupt;
but there are many provisions of the law which show its pur-
pose to hold the property of the bankrupt intact from the
time of the filing of the petition, in order that it may be
administered under the law if an adjudication in bank-
ruptcy shall follow the beginning of the proceedings. (Pro-
visions cited.) These provisions and others that might be
recited, show the policy and purpose of the bankruptcy act
to hold the estate in the custody of the court for the bene-
fit of creditors after the filing of the petition and until the
question of adjudication is determined. * * * Pending
the proceedings the law holds the property to abide the de-
cision of the court upon the question of adjudication as
effectively as if an attachment had been issued."

This holding was approved in the later case of Bailey v.
Baker Ice Machine Co., 239 U. S. 268, 60 L. Ed. 275, 36
S. Ct. 50, and in Stellwagon v. Crum, 245 U. S. 605, 38 S.
Ct. 215, 62 L. Ed. 507, the court again said that "bank-
ruptcy proceedings, taken within four months, displace
those in the state court and terminate the jurisdiction of
the latter." May v. Henderson, 268 U. S. 111, 45 S. Ct.
456, 69 L. Ed. 870, while not discussing any action of a
state court under an assignment for the benefit of creditors,
holds that an assignee under such assignment does not hold
property adversely, and that he may be compelled, sum-
marily, to account to the bankruptcy court for all monies
and property coming into his hands as such. Other federal
cases which hold that the filing of the petition in bank-
ruptcy is lis pendens, or that the bankruptcy court has para-

mount jurisdiction when a petition in bankruptcy has been filed, are Lea v. George M. West Co., (D. C.) 91 Fed. 237; In re Knight, (D. C.) 125 Fed. 35; In re Wellmade Gas Mantle Co., (C. C. A.) 233 Fed. 250; In re Lengert Wagon Company, (D. C.) 110 Féd. 927; Hooks v. Aldridge, (C. C. A.) 145 Fed. 865. Other cases to the same effect might be cited.

These cases, taken as a whole, distinctly announce the doctrine that the jurisdiction of the federal courts in bankruptcy is paramount; that the filing of a petition in bankruptcy is a proceeding in rem, gives notice to all the world, is as effective to hold the property of the bankrupt as though a writ of attachment had been issued and served; that when the adjudication in bankruptcy has been made, it relates back to the filing of the petition, and holds the property of the bankrupt, not held adversely by another, as of the date of the filing of the petition, just as a judgment against a defendant in a case in which a writ of attachment has been issued holds the property attached as of the date when the attachment was made; and that an assignee for the benefit of creditors, who has not acquired an individual claim (as in Trust Co. v. Cominger, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413) before the filing of the petition in bankruptcy may be compelled to account, in a summary proceeding, in the bankruptcy court. This, which we must recognize as law, would seem to dispose of the contention that the determination of the state court as to the amount due from the assignee for the benefit of creditors is final, and binding upon the bankruptcy court, unless it be, as contended, that, under the rule of comity between courts, the state court's jurisdiction did not cease till it was given notice of the adjudication in bankruptcy and a request was made by the bankruptcy court to turn over the assets.

If that rule is absolute, it would, of course, follow, that an assignee for the benefit of creditors might frequently, under a statute permitting it, dispose of and distribute the property coming into his hands before an adjudication in

bankruptcy could be made, thus defeating the federal bankruptcy act, and he might, in fact, perhaps not infrequently, under a statute permitting it, by disposing of and distributing the property coming into his hands within less than four months, render entirely nugatory a petition in bankruptcy filed within the period of four months allowed by the bankruptcy act after the making and filing of the assignment. It is not likely that the federal courts would be willing to adopt a rule of comity that would lead to such results, nor is it reasonable for state courts to insist that they should do so. And while the rule of comity between courts is one of sound public policy and should be applied in a spirit of liberality, it is clear that its application must depend somewhat on circumstances. So far as we are aware, it has never been applied in a case like that at bar, but the contrary is true, as we shall see. It is true that language may be found in some of the cases that, perhaps, would indicate the rule of comity to be as broad as contended by counsel for appellant. See, for instance, In re Dayton Coal & Iron Co., (D. C.) 291 Fed. 390; In re Rathman, (C. C. A.) 183 Fed. 913; Carling v. Lumber Co., (C. C. A.) 113 Fed. 483; Martin v. Oliver, (C. C. A.) 260 Fed. 89. In each of these cases the state court, before the adjudication in bankruptcy, determined a lien or adverse claim created before the filing of the petition in bankruptcy, and the jurisdiction of the state court was upheld at least as against a summary proceeding in the bankruptcy court. Without pointing out all the differences existing between these cases and the one at bar, it may be said that in those cases the state courts had, at the time, complete jurisdiction, founded upon general laws, to make the orders involved in these cases.. The situation is different in the case at bar. If we assume, as we may for the purposes of this case, that the law of this state providing for the assignment for the benefit of creditors is still in force notwithstanding the existence of the federal bankruptcy act, the jurisdiction of the state court to administer

the property of the debtor in question was never, at best, but a qualified one. What effect, if any, should be given to what it did before the adjudication in bankruptcy was made, need not be considered, as will appear later. Section 3a of the Federal Bankruptcy Act makes the execution of an assignment for the benefit of creditors an act of bankruptcy. Under section 70a of the same act, the title to all property of the bankrupt vested in the trustee, at least from the date of adjudication in bankruptcy, whether it related further back or not. The assignee was required to take notice of this, and he in fact had, as the record shows, actual notice of the pendency of the bankruptcy proceedings. From the time of the adjudication at least, he was merely custodian of the property without title; any acts other than custodial were void; from that time on at least, exclusive jurisdiction to deal with the property of the bankrupt—and Knight was only his agent—was vested in the bankruptcy court, and the settlement of his accounts by the state court on June 6, 1922, in which allowances were made to him for certain fees and moneys expended, was without jurisdiction. Collier, Bankruptcy (12th ed.) 557, 1126; In re Neuburger, (D. C.) 233 Fed. 701; Id. (C. C. A.) 240 Fed. 947. In the last authority (240 Fed. 947), it was said:

"If an adjudication in bankruptcy follows an assignment, it has the effect of automatically and of its own force avoiding the assignment. The trustee immediately becomes invested with title to the property. He does not take title as the successor of the assignee, but as the successor of the bankrupt. It becomes at once the duty of the assignee to turn over to the trustee, when elected, the estate covered by the assignment, and in the meantime to preserve the estate in tact. If he does more than that, he assumes the risk of his conduct, as he is chargeable with knowledge of the extent of his powers. The adjudication of the assignor in bankruptcy invests the bankruptcy court from that time with exclusive jurisdiction of the bankrupt's estate. * * * The state court was without jurisdiction to settle the accounts of the assignee. It is his plain duty to account in

the bankruptcy court for the assets of the bankrupt estate which came into his hands as assignee.''

The conclusion reached in this case would seem to be inescapable if we would not strip the bankruptcy act of the supremacy within its sphere which is accorded to it under the constitution of the United States. That seems, in fact, to be conceded by counsel for the appellant when they state that ''the state court is completely divested of jurisdiction to administer the property when a petition in bankruptcy has been filed and the proceeding has gone to an adjudication.'' In view of this concession, we are unable to perceive how counsel can still contend that the action of the state court, taken more than a month after the adjudication in bankruptcy, had any effect whatever herein. In any event, it would seem clear that the assignee for the benefit of creditors, whether he be considered as an officer of the court or as an individual, was required to account to the bankruptcy court at least for the money which he had in his hands on May 2, 1922, and which came into his hands thereafter, and that the order of the state court in settling his final account on June 6, 1922, was without jurisdiction and void and without binding effect on the bankruptcy court. That court had full power and authority to require the assignee to account for at least the monies just mentioned, and it would seem that this must necessarily be true whether the state law providing for assignments for the benefit of creditors is void altogether, as argued by counsel for respondent, or whether it ceased to be operative when the petition in bankruptcy was filed or the adjudication in bankruptcy was made. The cause of its ineffectiveness would seem to be wholly immaterial. And when the bankruptcy court acquired sole jurisdiction, as it did, the determination of the amount due was but in the exercise of that jurisdiction, and such amount could not thereafter, in the absence of appeal, be questioned by Knight, since that would involve a collateral attack on the judgment of a court of competent jurisdiction, and this is not permitted.

Stovall v. Banks, 10 Wall 583; 19 L. Ed. 1036. The au-
thorities are divided whether such judgment is only prima
facie evidence against a surety of the principal against
whom the judgment was rendered, or is conclusive. 32 Cyc.
136. Stovall v. Banks, supra, holds that it is conclusive.
We need not decide the point because it was not litigated
in the court below. The petition or answer herein raised
no issue in regard to it and the stipulation of facts does not
state whether the surety company had notice of the proceed-
ings against Knight, and for aught that appears, it may
have participated in the proceedings leading up to that
judgment. We must accordingly hold that unless judgment
against the surety is invalid for other reasons, the amount
found due by the bankruptcy court is binding upon both
of the defendants, and we have no occasion to inquire
whether or not the acts of Knight done, or the orders of the
state court made, prior to the adjudication in bankruptcy,
were valid.

2.    The judgment in the present case, both against Knight
and his surety, must, from what we have said, be affirmed,
if the bond given by Knight as assignee for the benefit of
creditors can be held to have been given for the benefit of
the trustee in bankruptcy, and can legally be sued upon by
him. The bond in question is in the usual form, refers to
the assignment, is payable to the State of Wyoming, and
recites:

"Now therefore, we do hereby undertake and warrant
that the said P. H. Knight will faithfully discharge the
duties of his trust in full compliance with law. If the said
P. H. Knight shall well, truly and faithfully perform and
discharge all of the duties of his trust as required by law,
then this obligation to be void and of no effect, otherwise
to remain in full force and virtue."

It is argued by counsel for appellant that the bond was
given by Knight as an officer of the state court, and as as-
signee for the benefit of creditors; that, accordingly, though

Knight could be held to account to the bankruptcy court as an individual, he could not be required to do so as an officer of the state court; that he has done his full duty as such officer, as evidenced by the decree of the state court approving his accounts and discharging him; that the liability under the bond is limited to that and the surety cannot, accordingly, be held responsible herein. But, without entering into a discussion of the many cases dealing with the question as to when an official bond is valid as a common-law bond and when it is not, we think that the case of Cohen v. American Surety Co., reported in 123 App. Div. 519, 108 N. Y. S. 385, Id., 129 App. Div. 166, 113 N. Y. S. 375, Id., 132 App. Div. 917, 116 N. Y. S. 801, Id., 192 N. Y. 227, 84 N. E. 1157—a similar case to that at bar—is, in connection with what we have already said, a complete answer to counsel's contention. In 123 App. Div. 526, 108 N. Y. S. 390, the court said:

"When the bond was given the bankruptcy law was in force and the defendant (the surety company) must be held to have known that by the act of assigning for the benefit of creditors a situation arose under which the bankruptcy proceeding could be instituted, and that if instituted, jurisdiction of the estate passed to the United States court, and that the assignee might there account, and therefore that contingency must be written in as part of the obligation which it assumed."

Language similar to this was used by the Court of Appeals in 192 N. Y. 227, 84 N. E. 947, and we cannot escape the conclusion that the holding should be accepted as sound, particularly in view of the language of the bond given in the case at bar. The sureties agreed that Knight should faithfully perform the duties of his trust "in full compliance with law." No good reason exists why the "law" there mentioned should be limited to the law of Wyoming relating to the assignment for the benefit of creditors, when the parties must be held to have known that upon institution of the bankruptcy proceedings and the adjudication

therein, the law of Wyoming relating to such assignments would no longer be applicable but would be superceded by the provisions of the bankruptcy law, and that Knight, accordingly, could not possibly fulfill his duties ''in full compliance with law,'' unless he accounted to the bankruptcy court, paying the amount due. So far as Knight is concerned, it is wholly immaterial, of course, whether it is said that he was required to account to the bankruptcy court as an individual or as an officer of the state court, and so far as the surety company is concerned, it is clear that, if we read into the bond, as we must, the provision that Knight should account to the bankruptcy court, a default existed in the terms of the bond whenever it appeared that this duty had not been complied with, and that is true whether Knight be considered as an officer of the state court or not. Knight received the property of the bankrupt into his possession on the strength of giving the bond in question. It was the promise of the defendant, as said by the New York court, to answer for his conduct which allowed him to take such possession. The surety company received a consideration for that promise and must be held responsible herein, and cannot be permitted to escape by the objection that it did not contemplate, when the bond was entered into, that it would be held bound by the paramount law of the land.

3. The bond in question was, as already noted, given to the State of Wyoming, as the obligee. Section 5580, W. C. S. 1920, provides that actions shall be brought in the name of the real party in interest. Section 5581, W. C. S. 1920, provides:

''The rule prescribed in the preceding section may be so applied, when a person forfeits his bond or renders his sureties liable, that any person injured thereby or who is by law entitled to the benefit of his security, may bring an action thereon, in his own name, against the person and his sureties, to recover the amount to which he is entitled by reason of the delinquency etc.''

It is contended by counsel for appellant that the bond in question is at best but a common-law bond, creates no liability beyond its own terms and hence does not permit suit thereon except by the obligee stated in the bond. The rule is not quite so broad as counsel claim, and is stated in 9 C. J. 28, to the effect that such bond "creates no liability beyond its own terms, notwithstanding the statutory provision in compliance with which it was intended to be given, unless there is a special remedial statute operating to effect that result." We think that section 5581, supra, must be considered as a special remedial statute, since it applies to any and all bonds without reference to the fact whether they are given under a particular statute or not, and we think that suit by the trustee in bankruptcy was authorized. See County v. Clarke, 73 Ga. 665; Smith v. Taylor, 56 Ga. 292; Yeakle v. Winters, 60 Ind. 554; Moore v. Jackson, 35 Ind. 360; Mayor v. Goldman, 125 N. Y. 395, 26 N. E. 456. The statute also seems to answer the further contention of counsel for appellant that the suit herein could not be brought unless authorized by an order of the state court. The statute aforesaid does not require such authorization, and it was held in State v. Cutting, 2 C. S. 1, under a similar statute, that none was necessary. Furthermore, if, as heretofore stated, the parties must be considered as having contemplated accounting to the bankruptcy court, it would seem to follow necessarily that no auhorization of the state court could be required. If any authorization was necessary, the proper court to grant that was, under the circumstances, the bankruptcy court whose officer brought the suit, and that authorization was obtained.

From what we have said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*

POTTER, J., and KIMBALL, J., concur.